# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

DO NO HARM,

*Plaintiff,*

    v.

NATIONAL ASSOCIATION
OF EMERGENCY MEDICAL
TECHNICIANS,

*Defendant.*

Case No.    **3:24-cv-11-CWR-LGI**

## VERIFIED COMPLAINT

1.     "Racial discrimination is invidious in all contexts." *SFFA v. Harvard*, 500 U.S. 181, 214 (2023) (cleaned up). Healthcare especially.

2.     Defendant, National Association of Emergency Medical Technicians (or NAEMT) normally has its professionals pledge to serve everyone, "unrestricted by consideration of nationality, race, creed, [or] color." *Code of Ethics for EMS Practitioners* (last visited Jan. 4, 2024), perma.cc/7T3X-WFXQ.

3.     But NAEMT is disregarding that pledge. NAEMT is operating a race-based "diversity" scholarship that awards money only to "students of color." White students are flatly excluded, even though NAEMT admits that the program is "a contract."

4.     NAEMT is not just violating its own pledge. It's violating federal law.

1

5.      Racial discrimination has been unlawful in private contracting since at least 1866, when Congress passed 42 U.S.C. §1981. Section 1981 "protects the equal rights of all persons … to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up).

6.      "Eliminating racial discrimination means eliminating all of it." *Harvard*, 600 U.S. at 206. No racial discrimination is benign: It always "'demeans the dignity and worth'" of every American "'to be judged'" by his or race "'instead of by his or her own merit and essential qualities.'" *Id.* at 220. Because NAEMT awards its scholarships based on race, it violates §1981.

## PARTIES

7.      Plaintiff, Do No Harm, is a nationwide membership organization consisting of healthcare professionals, students, patients, and policymakers who want to protect healthcare from radical, divisive, and discriminatory ideologies.

8.      Do No Harm accomplishes its mission through education and advocacy about the dangerous ideas being embedded in medicine. It has, among other things, sued the Biden administration for introducing discriminatory "equity" criteria into Medicare, sued private medical organizations for creating racially exclusive fellowships, and filed Office of Civil Rights complaints against medical schools that create fellowships and scholarships that exclude students based on race.

9.      Do No Harm has at least one member (Member A) who is ready and able to apply for the scholarship if a court orders NAEMT to stop discriminating against applicants based on race.

10.      Defendant, NAEMT, is a national association of emergency medical responders, such as paramedics, emergency medical technicians, and other medical professionals who provide urgent medical care. NAEMT is headquartered in Clinton, Mississippi, which is also NAEMT's principal place of business.

## JURISDICTION AND VENUE

11.      This Court has subject-matter jurisdiction under 28 U.S.C. §1331.

12.      Venue is proper under 28 U.S.C. §1391 because NAEMT resides here and a substantial part of the events and omissions giving rise to the claim occurred here.

## FACTUAL ALLEGATIONS

**A.      NAEMT operates a race-based scholarship program.**

13.      NAEMT currently runs a diversity scholarship program.

14.      The program awards up to four scholarships of $1,250 that may be used for tuition, fees, and books. Ex. A, *available at* perma.cc/L3NJ-FGDA.

15.      NAEMT will start accepting applications on February 1 and stop accepting applications on March 31, 2024.

16.      Diversity scholarships "are not awarded for course work already taken." Ex. A.

3

17.     According to NAEMT, scholarship contracts will be awarded based on the following criteria:

- Commitment to entering the EMS profession;
- Financial need;
- Service to their community; and
- Ability to serve as a positive ambassador for the EMS profession. Ex. A.

18.     Applicants must submit an application by the deadline and describe (within 1,000 words) why they are pursuing this scholarship, their educational and employment goals, and how this scholarship would benefit them. Ex. A.

19.     This scholarship is a contract. NAEMT states that the scholarship recipient "must sign a contract agreeing to [the] scholarship guidelines" in exchange for the $1,250. Ex. A.

20.     In exchange for $1,250, scholarship recipients must:

- Begin the educational program in the term for which the award is granted.
- Fully complete the EMS program for which the scholarship is awarded.
- Maintain passing grades and remain in good standing throughout the course of study. (Recipients may be asked to submit grades each term prior to the next scholarship payment.)
- Seek certification by testing upon completion of their EMS educational program.
- Provide follow-up information and respond to NAEMT requests pertaining to their education and career. Ex. A.

21.     A scholarship recipient further agrees, in exchange for accepting $1,250, that she will "immediately refund scholarship funds" if she "withdraws or discontinues

the educational program prior to completion for reasons within his or her control." Ex. A. While no refund is required if the recipients are unable to complete the program "for reasons beyond their control," they must submit "[p]roof of reasons for program termination." Ex. A.

22.     NAEMT's diversity scholarship program is also a contest. Each year, at most, only four applicants will win the scholarships based on their 1,000-word essays and other guidelines.

23.     To be eligible for this scholarship, however, the applicant must be a student of color. NAEMT makes it clear that "[s]cholarship will be awarded to students of color." Ex. A.

24.     White students are not eligible.

**B.     Do No Harm's white members are ineligible for NAEMT's diversity scholarship.**

25.     Do No Harm has at least one student member, Member A, who is being harmed by NAEMT's racially discriminatory scholarship. Do No Harm's President, Kristina Rasmussen, knows Member A, has spoken to her about her intentions, and has personal knowledge of the relevant facts.

26.     Member A is a U.S. citizen.

27.     Member A satisfies all of the nonracial criteria for NAEMT's diversity scholarship program.

28.     Member A does not hold an EMS certification but intends to become an EMS practitioner.

29.     Member A is signed up for an EMT course at a large public university that starts this year. This course lasts one semester.

30.     Member A is committed to completing this certification training and becoming an EMT.

31.     Member A has a commitment to community service and will strive to a positive ambassador for the EMS profession. She has worked with the YMCA for nearly a decade, from cleaning bathrooms to serving on the leadership team. She loves working with children, helping teach and mentor students of all ages, both able-bodied and disabled.

32.     Member A has demonstrated financial need. Though her father had set aside money for her education, she and her father are estranged and he will not let her access it. Member A has to work, but what little money she makes cannot cover the cost of tuition.

33.     Member A would use the scholarship to cover tuition.

34.     Member A is white. Member A is not, and does not identify as, a student of color.

35.     NAEMT's scholarship program expressly discriminates against Member A by excluding her from competing for $1,250 based on her race.

36.     Member A is ready and able to apply for NAEMT's diversity scholarship, if a court ordered NAEMT to stop discriminating against white applicants.

37.     If a court grants that relief, she would assemble and promptly submit all the requested application materials.

38.     If she won, she is prepared to meet all requirements and expectations.

## CLAIM FOR RELIEF

## COUNT
## Violation of the Civil Rights Act of 1866
## (42 U.S.C. §1981)

39.     Do No Harm repeats and realleges each of the prior allegations.

40.     Section 1981 guarantees "[a]ll persons … the same right … to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. §1981(a).

41.     This provision "protects the equal right of all persons … to make and enforce contracts without respect to race." *Domino's*, 546 U.S. at 474. Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

42.     These rights "are protected against impairment by nongovernmental discrimination." 42 U.S.C. §1981(c).

43.     Section 1981 "protects the would-be contractor along with those who have already made contracts." *Domino's*, 546 U.S. at 475. The statute thus "offers relief when racial discrimination blocks the creation of a contractual relationship." *Id.*

7

44.     Section 1981 authorizes equitable and legal relief, including damages. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

45.     NAEMT is violating §1981 by offering a scholarship program that is open only to "students of color," an explicit race-based exclusion of whites.

46.     The program implicates a right protected by section 1981—the right to "make … contracts." 42 U.S.C. §1981(a).

47.     The scholarship program forms a contractual relationship between NAEMT and scholarship recipients. In exchange for $1,250, NAEMT expressly requires recipients to "sign a contract agreeing to [the] scholarship guidelines," which include—among others—the requirements to complete the EMS programs, maintain a certain level of grades, seek certification, and provide follow-up information to NAEMT upon request. Ex A. In return, NAEMT ensures its money is spent a certain way and increases the number of EMS professionals (from its desired racial groups).

48.     In addition, the scholarship program is a contest, in which only up to four scholarship recipients are chosen each year based on their 1,000-word essays and other guidelines. "A contest is a common example of a unilateral contract." *Personavera, LLC v. Coll. of Healthcare Info. Mgmt. Execs.*, 2021 WL 1313108, at *4 (E.D. Pa. Apr. 8). "'[P]ayment of a prize to a winner of a contest is the discharge of a contractual obligation.'" *Glasgow v. Sherwin-Williams Co.*, 901 F. Supp. 1185, 1194 (N.D. Miss. 1995). "'The acceptance by the contestants of the offer tendered by the sponsor of the contest creates an enforceable contract.'" *Id.*

49.     NAEMT limits the formation of this contractual relationship explicitly based on race.

50.     Accordingly, white students like Member A are ineligible to apply to, and are excluded from, NAEMT's program. They cannot compete for NAEMT's contracts on equal footing because of their race.

51.     NAEMT's express and intentional racial discrimination in the making of contracts violates §1981.

## PRAYER FOR RELIEF

Do No Harm asks this Court to enter judgment in its favor and against NAEMT, and to provide the following relief:

A.     A declaratory judgment that NAEMT's diversity scholarship program violates §1981.

B.     A temporary restraining order and preliminary injunction barring NAEMT, before the merits of this action are resolved, from closing the application period, selecting scholarship recipients, or enforcing the racially discriminatory eligibility criteria.

C.     A permanent injunction barring NAEMT from awarding scholarships under its current criteria.

D.     Nominal damages in the amount of $1.

E.     Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

F.     All other relief that Do No Harm is entitled to, including any relief necessary to undo NAEMT's closure of the application window or selection of scholarship recipients.

Dated: January 10, 2024

Thomas R. McCarthy (DC Bar No 489651)\*
Cameron T. Norris (VA Bar No 91524)\*
Frank H. Chang (DC Bar No 1686578)\*
C'Zar Bernstein (DC Bar No 1736561)\*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
czar@consovoymccarthy.com

\*pro hac vice forthcoming

Respectfully submitted,

*/s/ Emily S. Nobile*
Emily S. Nobile (MS Bar No. 101475)
P.O. Box 6592
Gulfport, MS 39506
(601) 493-9350
esnobile@gmail.com

*Attorneys for Do No Harm*

10

# VERIFICATION

I, Kristina Rasmussen, declare as follows:

1.      I am over the age of 18, of sound mind, and otherwise competent to sign this verification.

2.      I am the Executive Director of Do No Harm.

3.      I have reviewed this verified complaint.

4.      For the allegations within my personal knowledge, I believe them all to be true.

5.      For the allegations not within my personal knowledge, I believe them to be all true based on my review of the cited materials and communications with Member A.

6.      Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2024

_____
Kristina Rasmussen
Executive Director of Do No Harm