# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| DO NO HARM,<br><br>                             *Plaintiff*,<br><br>  v.<br><br>NATIONAL ASSOCIATION<br>OF EMERGENCY MEDICAL<br>TECHNICIANS,<br><br>                            *Defendant*. | Case No. 3:24-cv-00011-CWR-LGI |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S URGENT AND NECESSITOUS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
## (RULINGS REQUESTED BY <u>JANUARY 31</u> AND <u>MARCH 31, 2024</u>)

  NAEMT encourages its professionals to pledge to serve everyone, "unrestricted by consideration of nationality, race, creed, [or] color." *Code of Ethics for EMS Practitioners* (last visited Jan. 4, 2024), perma.cc/7T3X-WFXQ. But NAEMT is disregarding its own pledge when it comes to scholarships. NAEMT is operating a race-based scholarship that awards money only to "students of color." White students are flatly excluded.

  NAEMT is not just violating its own pledge. It's violating federal law. This kind of rank discrimination has been outlawed since at least 1866, when Congress enacted 42 U.S.C. §1981. Section 1981 "protects the equal rights of all persons … to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up). Plaintiff, Do No Harm, has at least one member who is

1

able and ready to apply for the diversity scholarship in 2024, but cannot because she is the wrong race. This Court should declare that NAEMT's discriminatory program violates §1981 and permanently enjoin its racial bar.

But the Court currently doesn't have time to decide that question. NAEMT will begin accepting applications on February 1, close the application window on March 31, and pick winners. Once it does, this Court might lose jurisdiction, and Do No Harm's member *will* suffer illegal racial discrimination that bars her from competing for this program. To preserve the status quo, Do No Harm asks this Court, **by January 31, 2024**, to enter a TRO barring NAEMT from closing the application window or picking winners until this Court rules on Do No Harm's request for a preliminary injunction. Do No Harm also asks this Court, **by March 31, 2024**, to enter a preliminary injunction barring NAEMT from closing the application window or picking winners until further order of the Court. *See, e.g.*, *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 2023 WL 6520763, at *1 (11th Cir. Sept. 30) (granting similar relief).

## BACKGROUND

### I.  NAEMT operates a discriminatory scholarship program that excludes certain applicants based on race.

NAEMT operates a discriminatory scholarship program that excludes certain applicants based on race. This program will award up to four scholarships of $1,250 that may be used for tuition, fees, and books. VC ¶14.

According to NAEMT, scholarships will be awarded based on the following criteria:

- Commitment to entering the EMS profession;
- Financial need;
- Service to their community; and
- Ability to serve as a positive ambassador for the EMS profession. VC ¶17.

Applicants must submit an application by the deadline and describe (within 1,000 words) why they are pursuing this scholarship, their educational and employment goals, and how this scholarship would benefit them. VC-Ex. A.

This scholarship is a contract. NAEMT states that the recipient "must sign a contract agreeing to [the] scholarship guidelines" in exchange for $1,250. *Id.* In exchange for $1,250, the scholarship recipient must:

- Begin the educational program in the term for which the award is granted.
- Fully complete the EMS program for which the scholarship is awarded.
- Maintain passing grades and remain in good standing throughout the course of study. (Recipient may be asked to submit grades each term prior to the next scholarship payment.)
- Seek certification by testing upon completion of their EMS educational program.
- Provide follow-up information and respond to NAEMT requests pertaining to their education and career.

*Id.* A scholarship recipient further agrees, as a condition of accepting $1,250, that they will "immediately refund scholarship funds" if he or she "withdraws or discontinues the educational program prior to completion for reasons within his or her control." *Id.*

3

While no refund is required if recipients are unable to complete the program "for reasons beyond their control," they must submit "[p]roof of reasons for program termination." *Id.*

To be eligible for this scholarship, however, the applicant must be a student of color. *Id.* NAEMT makes it clear that "[s]cholarship will be awarded to students of color." *Id.* White students are not eligible. *Id.*

## II. Do No Harm's white members are ineligible for NAEMT's diversity scholarship.

Do No Harm has at least one student member who is being harmed by NAEMT's racially discriminatory scholarship program, including Member A. Rasmussen Decl. ¶4. Member A satisfies all of the nonracial criteria for NAEMT's diversity scholarship program. VC ¶27. Member A does not hold an EMS certification but intends to become an EMS practitioner. A Decl. ¶4. Member A signed up for an EMS course at a large public university that starts this year. *Id.* ¶5. This course lasts one semester. *Id.*

Member A is committed to completing this certification training and becoming an EMT. *Id.* ¶6. Member A has commitment to community service and will strive to be a positive ambassador for the EMS profession. *Id.* ¶7. Member A has worked with the YMCA for nearly a decade, from cleaning bathrooms to serving on the leadership team. *Id.* She loves working with children, helping teach and mentor students of all ages, both able-bodied and disabled. *Id.*

4

Member A also has demonstrated financial need. *Id.* ¶8. Though her father had set aside money for her education, she and her father are estranged and he will not let her access it. *Id.* Member A has to work, but what little money she makes cannot cover the cost of tuition. *Id.* Member A would use the scholarship to cover tuition. *Id.* ¶9.

Member A is white. *Id.* ¶10. NAEMT's scholarship program expressly discriminates against her by excluding her based on her race. VC ¶35. Member A is ready and able to apply for NAEMT's diversity scholarship, if a court ordered NAEMT to stop discriminating against white applicants. A Decl. ¶12. If a court grants that relief, she would assemble and promptly submit all the requested application materials. *Id.* ¶13. If she won, she is prepared to meet all requirements and expectations. *Id.* ¶14.

## ARGUMENT

Do No Harm is entitled to interim relief if it can satisfy four factors: a likelihood of success on the merits, a substantial threat of irreparable injury, the balance of harms, and the public interest. *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). Do No Harm satisfies all four.

### I.     NAEMT's race-based scholarship violates §1981.

Section 1981 states that "[a]ll persons … shall have the same right … to make and enforce contracts … and to the full and equal benefit of all laws … as is enjoyed by white citizens." 42 U.S.C. §1981(a). It "protects the equal right of all persons … without respect to race." *Domino's*, 546 U.S. at 474 (cleaned up). And its "broad terms" bar discrimination "against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp.*

5

*Co.*, 427 U.S. 273, 295 (1976); *accord Fearless*, 2023 WL 6520763, at *1; *Crawford v. Roadway Express, Inc.*, 485 F. Supp. 914, 922 (W.D. La. 1980).

Section 1981 prohibits racial discrimination in "all phases and incidents of the contractual relationship." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 302 (1994). Because §1981 protects "the making … of contracts," §1983(b), a contract "need not already exist," *Domino's*, 546 U.S. at 476. The statute "protects the would-be contractor along with those who have already made contracts." *Id.* It "offers relief when racial discrimination blocks the creation of a contractual relationship." *Id.* This statute also applies to "nongovernmental" actors. §1981(c). It contains a federal cause of action and authorizes equitable relief and damages. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 545, 459-60 (1975).

NAEMT is violating §1981 by expressly excluding certain applicants based on race. Its program implicates the activities enumerated under §1981: "the making … of contracts." §1981(b). Scholarship recipients "must sign a contract agreeing to [the] scholarship guidelines" in exchange for $1,250. VC ¶47; VC-Ex. A. In addition, scholarship recipients must agree to take several specific actions. VC ¶47; VC-Ex. A. Scholarship recipients further agree to immediately refund scholarship funds if they voluntarily withdraw or discontinue their EMS program. VC ¶21; VC-Ex. A. This manifestation of "'mutual assent'" and exchange of promises are "'the essential elements of offer, acceptance, and consideration.'" *Gulf Coast Hospice LLC v. LHC Grp., Inc.*, 273 So. 3d 721, 724 (Miss. 2019); *see also Theobald v. Nosser*, 752 So. 2d 1036, 1040 (Miss. 1999) ("'All

6

that is needed to constitute a valid consideration to support an agreement or contract is that there be either a benefit to the promissor or a detriment to the promise.'").

NAEMT's facial race-based discrimination is intentional and constitutes disparate treatment. *See Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1014 (5th Cir. 2023). Under §1981, "a plaintiff who alleges a policy that is discriminatory *on its face* is not required to make further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins. Co., Inc.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014); *see also Hassan v. City of New York*, 804 F.3d 277, 295 (3d Cir. 2015) ("Put another way, direct evidence of intent is 'supplied by the policy itself.'"). NAEMT will award the "diversity" scholarship to "students of color," but won't award it to white students. VC ¶23; VC-Ex. A.

## II. Do No Harm and its members will suffer irreparable harm without immediate relief.

Do No Harm and its members are currently suffering, and will suffer, irreparable harm absent interim relief. Two harms are most acute.

First, Do No Harm's members—as "'[v]ictims of discrimination'"—"'suffer irreparable injury, regardless of pecuniary damage.'" *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1424 (11th Cir. 1984); *see also Fearless*, 2023 WL 6520763, at *1 (granting injunction pending appeal under §1981 in a similar case); *Coal. for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, 295 F. Supp. 3d 540, 557-58 (D. Md. 2017) (irreparable injury "'comes from the maintenance of segregative policies'").

Second, "[t]he injury in cases of this kind is that a discriminatory classification prevents the plaintiff from competing on equal footing." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (cleaned up); *see also Parents Involved in Cmty. Schs v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) ("being forced to compete in a race-based system that may prejudice the plaintiff"). This "denial of equal treatment result[s] from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Assoc Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). It is irreparable. Here, "monetary damages are inadequate to ensure that" Do No Harm's members, including Member A, "may compete … on a level (and legal) playing field" for the current scholarship cycle. *Planned Parenthood of N.Y.C. v. HHS*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018).

That lost opportunity is particularly irreparable because of NAEMT's rapid deadlines. NAEMT will open this year's application window on February 1, and then close it on March 31, 2024. VC ¶15; VC-Ex. A. Absent interim relief, NAEMT would award the scholarships before Do No Harm could be heard. Once the application period closes and award decisions have been made, Member A will have "no do over." *League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016). She will have lost the opportunity to apply for or receive the $1,250 scholarship in the normal course. Her course will be over, A Decl. ¶5, and NAEMT refuses to give scholarships for course work that was done in the past, VC ¶16. That lost opportunity based on racial discrimination

cannot be quantified or remedied with money damages. *See MacGinnitie v. Hobbs Grp.*, 420 F.3d 1234, 1242 (11th Cir. 2005); *Planned Parenthood*, 337 F. Supp. 3d at 343.

### III. The balance of harms favors interim relief.

The balance of harms favors Do No Harm. As explained, the harm to it and its members is substantial and irreparable: the harm of racial discrimination, the inability to compete on an equal footing, and the potential permanent loss of a valuable opportunity. NAEMT, however, faces only the potential for a delay in its ability to select scholarship recipients. This delay will "not substantially injure" NAEMT. *League of Women Voters*, 868 F.3d at 12. Courts have recognized that a mere delay imposes little, if any, harm, especially where the deadline was "arbitrarily set in the first place." *GOS Operator, LLC v. Sebellius*, 2012 WL 175056, at *5 (S.D. Ala. Jan. 20). And NAEMT brought any harm it might suffer on itself by adopting a racially discriminatory program. *See Kos Pharms., Inc. v. Andryx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004). The balance of the harms favors an injunction. *See Am. All. for Equal Rts.*, 2023 WL 6520763, at *1.

### IV. The public interest favors issuing immediate relief.

The public interest also favors Do No Harm. "[C]ivil rights actions vindicate a public interest." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001) (citing *Williams v. Thomas*, 692 F.2d 1032, 1038 (5th Cir. 1982)). And "[i]t is in the public interest for courts to carry out the will of Congress." *Myland Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 45 (D.D.C. 2000). Especially where, as here, NAEMT has engaged in "[r]acial discrimination," which "is invidious in all contexts." *SFFA*, 143 S. Ct. at 2166

(cleaned up). The "public interest favors an injunction." *Fearless*, 2023 WL 6520763, at *1.

Relatedly, because Do No Harm is "engaged in public-interest litigation, an area in which the courts have recognized an exception to the Rule 65 security requirement," this Court should not require a bond. *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1084 (5th Cir. 1981); *BellSouth Telecomms., Inc. v. MCI Metro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005).

## CONCLUSION

For foregoing reasons, this Court should grant Do No Harm's motion for a temporary restraining order and preliminary injunction.

Dated: January 10, 2024

Thomas R. McCarthy (DC Bar No 489651)*
Cameron T. Norris (VA Bar No 91524)*
Frank H. Chang (DC Bar No 1686578)*
C'Zar Bernstein (DC Bar No 1736561)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
czar@consovoymccarthy.com

*pro hac vice pending

Respectfully submitted,

/s/ Emily S. Nobile
Emily S. Nobile (MS Bar No. 101475)
P.O. Box 6592
Gulfport, MS 39506
(601) 493-9350
esnobile@gmail.com

*Attorneys for Do No Harm*