## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**DO NO HARM**,

          *Plaintiff*,

v.

**NATIONAL ASSOCIATION OF EMERGENCY MEDICAL TECHNICIANS**,

          *Defendant*.

CAUSE NO. 3:24-CV-11-CWR-LGI

## ORDER

Before the Court is Plaintiff Do No Harm's *Urgent and Necessitous Motion for Temporary Restraining Order and Preliminary Injunction*. Docket No. 8. Upon review, the motion for TRO will be denied and the motion for preliminary injunction will be carried with the case.

**I.     Factual and Procedural History**

Do No Harm "is a nationwide membership organization consisting of healthcare professionals, students, patients, and policymakers who want to protect healthcare from radical, divisive, and discriminatory ideologies." Docket No. 1 at 2. It objects to a "woke takeover" of the medical profession. Do No Harm Staff, *The Woke Language Police Have Come For Health Care*, DO NO HARM: COMMENTARY (May 22, 2023), https://donoharmmedicine.org/2023/05/22/the-woke-language-police-have-come-for-health-care/.

Defendant National Association of Emergency Medical Technicians ("NAEMT") "is the only national association representing the professional interests of paramedics, advanced

emergency medical technicians, emergency medical technicians, emergency medical responders, and other professionals providing prehospital and out-of-hospital emergent, urgent or preventive medical care." ABOUT NAEMT, https://www.naemt.org/about-naemt/about-NAEMT (last visited Jan. 23, 2024).

On January 10, 2024, Do No Harm filed its complaint in this case. It alleges that NAEMT operates "a race-based 'diversity' scholarship that awards money only to 'students of color.'" Docket No. 1 at 1. Do No Harm argues that the scholarship program "flatly" excludes white students. *Id.* Because there apparently is a future contractual relationship between NAEMT and scholarship recipients, Do No Harm says the program violates 42 U.S.C. § 1981. *Id.* The diversity scholarship awards $1,250 each to four students who do not hold an EMS certification but intend to become EMS practitioners. *Id.* at 4.

NAEMT has not yet been required to answer this suit or respond to these allegations. According to a 2021 post on its website, though, it explains that the scholarship reflects NAEMT's commitment "to supporting the development of greater diversity in the EMS workforce, so that [the EMS] workforce more closely reflects the communities [EMS professionals] serve." *NAEMT Announces New Diversity Scholarship*, NAEMT: ALL NEWS (Aug. 5, 2021), https://www.naemt.org/WhatsNewALLNEWS/2021/08/05/naemt-announces-new-diversity-scholarship.[1] The scholarship application window opens on February 1, 2024 and closes on March 31, 2024. Docket No. 1-1.

---

[1] In 2019, 72% of the EMS workforce identified as non-Hispanic White, 13% identified as Hispanic, and 8% identified as non-Hispanic Black. Rebecca E. Cash et al., *Trends in demographic and employment characteristics of US emergency medical technicians and paramedics, 2011-2019*, J. AM. COLL. EMERGENCY PHYSICIANS, Aug. 2022, at 4.

Do No Harm alleges that one of its members, a white woman who prefers to go by "Member A," is "harmed by NAEMT's racially discriminatory scholarship." Docket No. 1 at 5. Member A claims she is enrolled, or will be enrolled, in an EMS course at an unnamed "large public university." Docket No. 8 at 4. Member A declares that she does not hold an EMS certification but intends to become an EMS practitioner. *Id.*

The same day Do No Harm filed its complaint, it filed the present motion. *See id.* It seeks "a TRO prohibiting NAEMT from closing the application window or picking a winner until this Court resolves Do No Harm's request for a preliminary injunction." *Id.* at 2.

## II.     Legal Standard

Courts have discretionary authority to grant a temporary restraining order or preliminary injunction "to protect the plaintiff from irreparable injury." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). Either form of relief, however, is an "extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Id.* at 573. To meet its burden, the movant must establish the following four elements:

> (1) a substantial likelihood that plaintiff will prevail on the merits;
> (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;
> (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and
> (4) that granting the preliminary injunction will not disserve the public interest.

*Id.* at 572 (citations omitted).

## III.    Discussion

Section 1981 guarantees all persons "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. "To succeed on a § 1981 claim, a plaintiff

3

must establish (1) that she is a member of a racial minority; (2) that the defendant had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (cleaned up).

On this undeveloped record, the Court is not persuaded that Do No Harm has standing to bring this § 1981 claim.

Federal courts are limited to deciding only actual "Cases" or "Controversies." U.S. CONST. art. III, § 2. To meet this requirement, courts require litigants to "have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (citation omitted). That means the litigant must demonstrate that it: (1) "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is fairly "traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

It is unclear whether Do No Harm's member has suffered an injury in fact. Its motion delineates four eligibility requirements for NAEMT's scholarship eligibility: (1) commitment to entering the EMS profession; (2) financial need; (3) service to their community; and (4) ability to serve as a positive ambassador for the EMS profession. Docket No. 1 at 4. Member A says she satisfies all of these requirements and is prepared to "assemble and promptly submit all the requested application materials." Docket No. 1 at 7. So she may. The Court sees no actual barrier preventing Member A from submitting an application when the window opens in 9 days. And as such, it is not clear that Member A is facing imminent injury.

*Arguello* and *Barber* are instructive. In the first case, the Fifth Circuit held that—at least in the retail context—"a § 1981 claim must allege that the plaintiff was *actually prevented, and not merely deterred*" from entering into a contract. 330 F.3d at 358-59. It relied upon circuit precedent emphasizing that in § 1981 cases, "the plaintiff must demonstrate 'the loss of an actual, not speculative or prospective, contract interest.'" *Id.* at 358 (quoting *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001)). The appellate court's review of the evidence showed that Ms. Arguello and her family did not meet that standard. *Id.* at 359.

The Fifth Circuit's decision in *Barber v. Bryant* is also illustrative. There, the district court granted a preliminary injunction after finding that the plaintiffs—a coalition of LGBT+ citizens, allies, and affiliated organizations—had standing to challenge a Mississippi law that allegedly restricted their rights under the Equal Protection Clause. 860 F.3d at 351. But the Fifth Circuit reversed. "Future injuries can provide the basis for standing," the court held, "but they must be *certainly impending* to constitute injury in fact, and allegations of *possible* future injury are not sufficient. An injury that is based on a speculative chain of possibilities does not confer Article III standing." *Id.* at 357 (cleaned up). Because the plaintiffs' injuries were too speculative, their lawsuit was dismissed.[2] *Id.* at 358.

Applied here, the caselaw suggests infirmities in Do No Harm's standing to bring this § 1981 claim. Its member has apparently only been deterred from applying, rather than refused a contract. *See Arguello*, 330 F.3d at 358-59. And in the absence of a racial requirement in the scholarship's eligibility requirements or an explicit bar against white applicants, we

---

[2] The Supreme Court's decision in *Romer v. Evans*, 517 U.S. 620 (1996), a textbook pre-enforcement challenge, did not reassure the Fifth Circuit's concerns. "The Court did not address standing in *Evans*, and we are not bound to find standing in a similar circumstance in the absence of such a holding," it reasoned. *Barber*, 860 F.3d at 358 (citation omitted).


are all forced to "speculate as to the injuries [Member A] might suffer. That we cannot do." *Barber*, 860 F.3d at 357.

The Court notes the possibility that *Barber v. Bryant* has been overruled by the Supreme Court's decision in *303 Creative LLC v. Elenis*, 600 U.S. 570, 583 (2023). The parties may brief this further in their responses and replies to the preliminary injunction motion. At this moment, though, because this pre-enforcement challenge claims nothing more than an injury that is based on a "speculative chain of possibilities," *Barber*, 860 F.3d at 357, Fifth Circuit precedent weighs against relief.

### IV.   Conclusion

The Court **DENIES** Do No Harm's Motion for Temporary Restraining Order. Briefing shall continue on the Motion for Preliminary Injunction, which can be resolved in time to protect all parties' ultimate interests.

Lastly, the Court observes that as of today, NAEMT has removed its diversity scholarship from public display on its website. If the parties' differences have been resolved, they shall promptly notify the Court.

**SO ORDERED**, this the 23rd day of January 2024.

<div style="text-align: right;">
s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE
</div>