# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

DO NO HARM,

        *Plaintiff*,

  v.

NATIONAL ASSOCIATION
OF EMERGENCY MEDICAL
TECHNICIANS,

        *Defendant*.

Case No. 3:24-cv-11-CWR-LGI

## AMENDED COMPLAINT

1. "Racial discrimination is invidious in all contexts." *SFFA v. Harvard*, 500 U.S. 181, 214 (2023) (cleaned up). Healthcare especially.

2. Defendant, National Association of Emergency Medical Technicians (or NAEMT), normally has its professionals pledge to serve everyone, "unrestricted by consideration of nationality, race, creed, [or] color." *Code of Ethics for EMS Practitioners* (last visited Jan. 9, 2024), perma.cc/7T3X-WFXQ.

3. But NAEMT is disregarding that pledge. NAEMT is operating a race-based "diversity" scholarship that awards money only to "students of color." White students are excluded, even though NAEMT admits that the program is "a contract."

4. NAEMT is not just violating its own pledge. It's violating federal law.

5. Racial discrimination has been unlawful in private contracting since at least 1866, when Congress passed 42 U.S.C. §1981. Section 1981 "protects the equal

1

rights of all persons … to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up).

6. "Eliminating racial discrimination means eliminating all of it." *Harvard*, 600 U.S. at 206. No racial discrimination is benign: It always "'demeans the dignity and worth'" of every American "'to be judged'" by his or race "'instead of by his or her own merit and essential qualities.'" *Id.* at 220.

7. Because NAEMT awards its scholarships based on race, it violates §1981.

## PARTIES

8. Plaintiff, Do No Harm, is a nationwide membership organization consisting of healthcare professionals, students, patients, and policymakers who want to protect healthcare from radical, divisive, and discriminatory ideologies.

9. Do No Harm accomplishes its mission through education and advocacy about the dangerous ideas being embedded in medicine. It has, among other things, sued the Biden administration for introducing discriminatory "equity" criteria into Medicare, sued private medical organizations for creating racially exclusive fellowships, and filed Office of Civil Rights complaints against medical schools that create fellowships and scholarships that exclude students based on race.

10. Do No Harm has at least one member who is ready and able to apply for the scholarship once a court orders NAEMT to stop considering race.

11. Defendant, NAEMT, is a national association of emergency medical responders, such as paramedics, emergency medical technicians, and other medical professionals who provide urgent medical care. NAEMT is headquartered in Clinton, Mississippi, which is also NAEMT's principal place of business.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. §1331.

13. Venue is proper under 28 U.S.C. §1391 because NAEMT resides here and a substantial part of the events and omissions giving rise to the claim occurred here.

## FACTUAL ALLEGATIONS
### A.   NAEMT operates a race-based scholarship program.

14. Since 2021, NAEMT has run a diversity scholarship program. When Do No Harm filed its original complaint, the criteria for the current cycle's scholarships were available at perma.cc/L3NJ-FGDA.

15. The program awards up to four scholarships of $1,250 that may be used for tuition, fees, and books.

16. Diversity scholarships "are not awarded for course work already taken."

17. According to NAEMT, scholarship contracts will be awarded based on the following criteria:

- Commitment to entering the EMS profession;
- Financial need;
- Service to their community; and
- Ability to serve as a positive ambassador for the EMS profession.

3

18. Applicants must submit an application by the deadline and describe (within 1,000 words) why they are pursuing this scholarship, their educational and employment goals, and how this scholarship would benefit them.

19. This scholarship is a contract. NAEMT states that the scholarship recipient "must sign a contract agreeing to [the] scholarship guidelines" in exchange for the $1,250.

20. In exchange for $1,250, scholarship recipients must:

- Begin the educational program in the term for which the award is granted.
- Fully complete the EMS program for which the scholarship is awarded.
- Maintain passing grades and remain in good standing throughout the course of study. (Recipients may be asked to submit grades each term prior to the next scholarship payment.)
- Seek certification by testing upon completion of their EMS educational program.
- Provide follow-up information and respond to NAEMT requests pertaining to their education and career.

21. A scholarship recipient further agrees, in exchange for accepting $1,250, that she will "immediately refund scholarship funds" if she "withdraws or discontinues the educational program prior to completion for reasons within his or her control." While no refund is required if the recipients are unable to complete the program "for reasons beyond their control," they must submit "[p]roof of reasons for program termination."

22. NAEMT's diversity scholarship program is also a contest. Each year, at most, only four applicants will win the scholarships based on their 1,000-word essays and other guidelines.

23. The scholarship is not equally available to students of all races.

24. To be eligible, applicants must be a student of color.

25. NAEMT's current criteria make it clear that "[s]cholarships will be awarded to students of color." When NAEMT launched the diversity scholarship in 2021, its news release likewise stressed that the scholarship "will be awarded to students of color." In February 2022, NAEMT again confirmed that the diversity scholarship "will be awarded to students of color."

26. White students are not "students of color."

27. According to NAEMT, the diversity scholarship "was established" to "support underrepresented groups in joining the EMS profession." Whites are not "underrepresented" in the EMS profession. Per an NAEMT report, the EMS profession has "struggled with recruiting a diverse workforce" because "certain groups remain underrepresented"; the report identifies those groups as nonwhite races and compares their percentages of the EMS workforce to their percentages of "the U.S. population."

28. The scholarship's racial focus is also in its title. The scholarships are called "diversity" scholarships. The word "diversity," when used by organizations like NAEMT, is "a code word for discrimination." *Price v. Valvoline, LLC*, 88 F.4th 1062,

1068 (5th Cir. 2023) (Ho, J., concurring in judgment). Applicants are considered "diverse" *because* they come from certain racial groups; and the goal is to engineer a profession where every race is "represented" in rough proportion to their percentage of the U.S. population. *See id.*; *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 509 (5th Cir. 2023) (en banc) (Ho, J., concurring).

29. NAEMT uses the word "diversity" the same way. This scholarship falls under NAEMT's "Diversity and Inclusion" initiatives. These initiatives pursue NAEMT's "belie[f] that the EMS workforce should reflect the demographics of the communities in which it serves." NAEMT, in other words, believes and pursues racial concordance—the idea that people receive better/worse healthcare from professionals of the same/different race. Racial concordance is debunked as a theory and illegal as a purpose.

30. NAEMT describes the scholarship's purpose as promoting "development of greater diversity in the EMS workforce so that our workforce reflects the communities that we serve." That purpose is racial balancing, which is patently illegal. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 733 (2007) (plurality); *accord Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 275 (1986) (plurality).

31. Because whites are not "students of color," they are flatly excluded from NAEMT's diversity scholarship. At a minimum, NAEMT prefers applicants who are nonwhite to applicants who are white—based on their race.

32. In 2022—the most recent year for which NAEMT published the information—NAEMT identified the winners of its diversity scholarships. None of the winners were white.

33. When Do No Harm filed its original complaint, NAEMT was set to start accepting applications for the current cycle on February 1, 2024, and stop accepting applications on March 31, 2024.

34. Solely in response to this lawsuit and to avoid a TRO and preliminary injunction, NAEMT voluntarily chose not to open the application process on February 1. NAEMT also agreed that it would not close the application window or pick winners for this year's diversity scholarship until this Court enters final judgment. Applicants thus have never been able to apply—or even access the website to start applying—for the scholarship this cycle.

### B. NAEMT's diversity scholarship discriminates against Do No Harm's white members.

35. Do No Harm has at least one student member, Member A, who is being harmed by NAEMT's racially discriminatory scholarship. Do No Harm's President, Kristina Rasmussen, knows Member A, has spoken to her about her intentions, and has personal knowledge of the relevant facts.

36. Member A is a U.S. citizen.

37. Member A satisfies all the nonracial criteria for NAEMT's diversity scholarship program.

38. Member A does not hold an EMS certification but intends to become an EMS practitioner.

39. When this complaint was filed, Member A had signed up for an EMT course at a large public university that started imminently. She has since started the course. Her course lasts one semester.

40. Member A is committed to completing this certification training and becoming an EMT.

41. Member A believes she would be highly competitive for the scholarship, but for her race. She has a commitment to community service and will strive to a positive ambassador for the EMS profession. She has worked with the YMCA for nearly a decade, from cleaning bathrooms to serving on the leadership team. She loves working with children, helping teach and mentor students of all ages—both able-bodied and disabled.

42. Member A has demonstrated financial need. Though her father had set aside money for her education, she and her father are estranged and he will not let her access it. Member A has to work, but what little money she makes cannot cover the cost of tuition.

43. Member A would use the scholarship to cover tuition.

44. Member A is white. Member A is not, and does not identify as, a student of color.

45. NAEMT's scholarship program expressly discriminates against Member A by excluding her from competing for $1,250 based on her race.

46. Member A is also unable to compete for $1,250 on an equal footing because of her race.

47. When Do No Harm filed its original complaint, Member A was ready and able to apply for the upcoming cycle of NAEMT's diversity scholarship, once a court ordered NAEMT to stop considering race. She still wants the scholarship, is still ready and able to apply, and will do so as soon as a court orders NAEMT to stop considering race and NAEMT reopens the application process.

48. If a court grants that relief, Member A would assemble and promptly submit all the requested application materials as soon as the process reopens.

49. If she won, she would meet all requirements and expectations.

## CLAIM FOR RELIEF
## COUNT
### Violation of the Civil Rights Act of 1866
### (42 U.S.C. §1981)

50. Do No Harm repeats and realleges each of the prior allegations.

51. Section 1981 guarantees "[a]ll persons … the same right … to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. §1981(a).

52. This provision "protects the equal right of all persons … to make and enforce contracts without respect to race." *Domino's*, 546 U.S. at 474. Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

53. These rights "are protected against impairment by nongovernmental discrimination." 42 U.S.C. §1981(c).

54. Section 1981 "protects the would-be contractor along with those who have already made contracts." *Domino's*, 546 U.S. at 475. The statute thus "offers relief when racial discrimination blocks the creation of a contractual relationship." *Id.*

55. Section 1981 authorizes equitable and legal relief, including damages. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

56. NAEMT is violating §1981 by offering a scholarship program that is open only to "students of color," an explicit race-based exclusion of whites. Even if the program merely preferred students of color, that racial preference would be illegal race-based contracting all the same.

57. The program implicates a right protected by section 1981—the right to "make … contracts." 42 U.S.C. §1981(a).

58. The scholarship program forms a contractual relationship between NAEMT and scholarship recipients. In exchange for $1,250, NAEMT expressly requires recipients to "sign a contract agreeing to [the] scholarship guidelines," which include—among others—the requirements to complete the EMS programs, maintain a

10

certain level of grades, seek certification, and provide follow-up information to NAEMT upon request. In return, NAEMT ensures its money is spent a certain way and increases the number of EMS professionals (from its desired racial groups).

59. In addition, the scholarship program is a contest, in which only up to four scholarship recipients are chosen each year based on their 1,000-word essays and other guidelines. "A contest is a common example of a unilateral contract." *Personavera, LLC v. Coll. of Healthcare Info. Mgmt. Execs.*, 2021 WL 1313108, at *4 (E.D. Pa. Apr. 8). "'[P]ayment of a prize to a winner of a contest is the discharge of a contractual obligation.'" *Glasgow v. Sherwin-Williams Co.*, 901 F. Supp. 1185, 1194 (N.D. Miss. 1995). "'The acceptance by the contestants of the offer tendered by the sponsor of the contest creates an enforceable contract.'" *Id.*

60. NAEMT limits the formation of this contractual relationship explicitly based on race.

61. Accordingly, white students like Member A are ineligible to apply to, excluded from, and disadvantaged when applying to NAEMT's program. They cannot compete for NAEMT's contracts on equal footing because of their race.

62. NAEMT's express and intentional racial discrimination in the making of contracts violates §1981.

63. NAEMT's takedown of the scholarship and refusal to let it go forward, if made permanent, would also violate §1981. It would eliminate a contract for the discriminatory purpose of not wanting to contract with certain races. *See McNeal v. Tate Cnty. Sch. Dist.*, 460 F.2d 568, 571 (5th Cir. 1971).

## PRAYER FOR RELIEF

Do No Harm asks this Court to enter judgment in its favor and against NAEMT and to provide the following relief:

A. A declaratory judgment that NAEMT, through its diversity scholarship program, is violating §1981.

B. A temporary restraining order and preliminary injunction barring NAEMT from closing the application period, selecting scholarship recipients, or seeing or considering applicants' race when awarding diversity scholarships.

C. A permanent injunction barring NAEMT from seeing or considering applicants' race when awarding diversity scholarships.

D. Nominal damages in the amount of $1.

E. Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

F. All other relief that Do No Harm is entitled to, including any relief necessary to undo NAEMT's suspension or elimination of the scholarship, closure of the application window, or selection of scholarship recipients.

Dated: January 10, 2024  Respectfully submitted,
Amended: March 4, 2024

/s/ *Cameron T. Norris*                              /s/ *Emily S. Nobile*
Thomas R. McCarthy (DC Bar No 489651)*   Emily S. Nobile (MS Bar No. 101475)
Cameron T. Norris (VA Bar No 91524)*       P.O. Box 6592
  *Lead Counsel*                                            Gulfport, MS 39506
Frank H. Chang (DC Bar No 1686578)*         (601) 493-9350
C'Zar Bernstein (DC Bar No 1736561)*         esnobile@gmail.com
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
czar@consovoymccarthy.com

*pro hac vice

*Attorneys for Do No Harm*