IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DO NO HARM**                                                                  **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO. 3:24-CV-11-CWR-LGI**

**NATIONAL ASSOCIATION OF**
**EMERGENCY MEDICAL TECHNICIANS**                                     **DEFENDANT**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant National Association of Emergency Medical Technicians ("NAEMT") submits its Memorandum in Support of its Motion to Dismiss Plaintiff's Amended Complaint [Doc. 20].

**Introduction**

DNH has no standing to confer jurisdiction to this Court. DNH has failed to actually name any member who has suffered an injury in fact as a result of the scholarship merely existing (as it also did in its original Complaint), or the result of the scholarship being suspended until this litigation resolves (which DNH agreed to, but now complains about). If anyone is pushing an ideological agenda, it is DNH. It is no newcomer to the courthouse in its short existence as an organization, as it has filed no less than nine lawsuits on behalf of unidentified, mystery "members" who have allegedly suffered damages across the nation. Plaintiff's grumblings displayed in this Court are theoretical at best and all-out illusory fictions at worst. But DNH cannot cure its standing problem here by naming a member.  Indeed, it cannot bring this claim regardless as a matter of law.

The scholarship at issue lists four criteria to apply: commitment to entering the EMS profession; financial need; service to their community; and ability to serve as a positive ambassador the EMS profession. DNH has failed to sufficiently allege that NAEMT has regarded

any unidentified member with "race-based animus," an essential element in analyzing 42 U.S.C. § 1981 under Fifth Circuit precedent. The Amended Complaint continues to lack any allegation that NAEMT has barred or preempted any member from an opportunity for student membership with NAEMT, as NAEMT's student membership bestows the same benefit opportunities to all members. This Court should dismiss the Amended Complaint for lack of standing or, in the alternative, for failure to state a claim under which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Facts and Procedural History

NAEMT is the only national association representing the professional interests of paramedics, advanced emergency medical technicians, emergency medical technicians, emergency medical responders, and other professionals providing prehospital and out-of-hospital emergent, urgent, or preventive medical care. https://www.naemt.org/about-naemt/about-NAEMT (last visited Feb. 27, 2024). It has offered the scholarship at issue since 2021 as one of the many ways NAEMT commits to support the development of diversity in the EMS workforce so that it may more closely reflects the communities the professionals serve. *NAEMT Announces New Diversity Scholarship,* NAEMT: ALL NEWS (Aug. 5, 2021), https://www.naemt.org/WhatsNewALLNEWS/2021/08/05/naemt-announces-new-diversity-scholarship; *see also* [Doc. 20]. DNH, on the other hand, defines itself as a "nationwide membership organization consisting of healthcare professionals, students, patients, and policy makers who want to protect healthcare from radical, divisive, and discriminatory ideologies." *Id.* at p. 2, ¶ 8.

DNH originally filed suit on January 10, 2024, alleging NAEMT operates a race-based diversity scholarship program that awards scholarship money to students of color. *See* [Doc. 1].

DNH moved the Court for a temporary restraining order and preliminary injunction the same day. [Docs. 8, 9]. This Court denied the motion for TRO and allowed the preliminary injunction motion to carry with the case for further briefing by the parties. [Doc. 12].

But in its Order, the Court also highlighted its concerns about DNH's access to the courthouse. Specifically, the Court found it unclear whether DNH's Member A has suffered an injury in fact. *Do No Harm v. Nat'l Ass'n of Emergency Med. Technicians*, No. 3:24-CV-11-CWR-LGI, 2024 WL 245630, at *2 (S.D. Miss. Jan. 23, 2024). The Court acknowledged that Member A, while unidentified, said she satisfies all requirements and is prepared to "assemble and promptly submit all the requested application materials" for the scholarship application. *Id.* (citing [Doc. 1] at p. 7). "And so she may," the Court noted. *Id.* The Court saw no actual barrier preventing Member A from submitting an application where the scholarship window had not yet opened at the time. *Id.* The Court also questioned DNH's standing to bring a § 1981 claim as Member A has "apparently only been deterred from applying, rather than refused a contract." *Id.* at *3 (case citation omitted).

The Court granted NAEMT until February 29, 2024 to file responsive pleadings to the Complaint and respond to the preliminary injunction motion. *See* 2/9/2024 Text Only Order. NAEMT advised DNH that NAMET would leave its application window open and would not pick winners for the scholarship until this Court entered final judgment, so DNH voluntarily withdrew its preliminary injunction motion. [Doc. 16]. NAEMT then answered the Complaint and filed a Motion to Dismiss for lack of standing, or in the alternative, failure to state a claim. [Docs. 17 – 19]. DNH then filed an Amended Complaint. [Doc. 20]. The Amended Complaint alleges the same causes of action with additional factual allegations. Member A has allegedly started an EMS course that lasts one semester where originally she was simply registered to begin. [Doc. 20] at p. 8

compared to [Doc. 1]. NAEMT's scholarship isn't awarded for course work already taken. *Id.* at p. 3. In a nutshell, DNH alleges that because a contractual relationship ultimately forms between NAEMT and a would-be scholarship winner, the scholarship at issue violates 42 U.S.C. § 1981. *See id.* DNH bases this on one sentence in the advertisement of the scholarship, but not in the criteria itself, that states "scholarships will be awarded to students of color who do not hold an EMS certification but who intend to become an EMS practitioner." *Id.* DNH seeks declaratory relief, injunctive relief, nominal damages in the amount of one dollar, attorney's fees, and any relief necessary to undo NAEMT's suspension or elimination of the scholarship, closure of the application window, or selection of the scholarship recipients.[1] *Id.* at p. 12.

## Motion Standards

Dismissals for lack of standing are granted under Federal Rule of Civil Procedure 12(b)(1). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Standing "derives from Article III of the Constitution, which confines federal courts to 'adjudicating actual 'cases' and 'controversies.'" *Moore v. Bryant*, 853 F.3d 245, 248–49 (5th Cir. 2017) (quoting U.S. Const. art. III, § 2, cl. 1). A plaintiff must show that she (1) "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is fairly "traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff must "clearly allege facts demonstrating" each element at the pleading stage. *Spokeo, Inc. v.*

---

[1] DNH voluntarily withdrew its preliminary injunction motion because NAEMT agreed to leave the application window open and not pick a scholarship winner until this litigation – that DNH initiated – concluded. [Doc. 16]. For DNH to turn around and insinuate NAEMT would choose to cancel the scholarship ignores that the current scholarship cycle is only delayed because of DNH -– not NAEMT. Further, it is factually and legally impossible that this course of action discriminates against anyone based on race, gender, or otherwise.

*Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, general factual allegations of injury resulting from a defendant's conduct may suffice, but a motion to dismiss succeeds if the plaintiff has failed to make "general factual allegations of injury resulting from the defendant's conduct." *Lujen*, 504 U.S. at 560.

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *Bell Atl. Corp. v. Twonbly*, 550 U.S. 544, 570 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009) (quoting *Twonbly*, 550 U.S. at 570).

## Law and Argument

DNH's sole claim arises under 42 U.S.C. § 1981. It provides:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. DNH has no standing to bring suit, it fails on its face, and even if DNH continues to re-articulate different (but essentially the same) allegations, it would not succeed because NAEMT has not violated Section 1981. Accordingly, the Court should dismiss Plaintiff's Amended Complaint.

## I.   Do No Harm and Member A lack standing to bring this claim under Section 1981.

DNH and mystery Member A lack standing to bring this suit. "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "If a litigant is unable to establish standing,

he may not seek relief on behalf of any party." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 361 (5th Cir. 2003) (citation omitted).

  *i. DNH lacks associational standing.*

  As an organization seeking to establish Article III associational standing, DNH has the burden to show: (1) at least one of its members has standing to sue in her own right; (2) the interests it seeks to protect in the litigation are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Associational standing requires that a plaintiff identify **by name** at least one member with standing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009) (holding that this "requirement of naming the affected members has never been dispensed with" except where "**all** the members of the organization are affected by the challenged activity") (emphasis added); *see also FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 235 (1990) (finding association lacked standing because an affidavit referencing but not naming "one or two" individuals with standing "fail[ed] to identify the individuals").

  At a minimum, and as DNH is aware from another suit in which it is involved, DNH is "required to identify at least one affected member by name." *See e.g., Do No Harm v. Pfizer*, 646 F.Supp.3d 490, 501 (S.D.N.Y. 2022) (quoting *Pen Am. Ctr., Inc. v. Trump*, 448 F.Supp.3d 309, 320-21 (S.D.N.Y. 2020) (rejecting the "argument that Plaintiff need not name an injured member at the pleading stage for associational standing.") (cleaned up). In *Pfizer*, the Southern District of New York disagreed with DNH and agreed with Pfizer that *Summers* still controlled, and that without the identity of any member with standing, petitioners did not satisfy "the requirement of injury in fact, **which is a hard floor of Article III jurisdiction**." *Pfizer*, 646 F.Supp.3d at 501

(quoting *Summers*, 555 U.S. at 497) (emphasis added).[2] This Court should reach the same conclusion and agree with a handful of other sister circuit courts of appeals on this issue.[3]

The only exception to naming a member is where *all* the members of an organization are affected, and DNH has not alleged, nor would or could that possibly be true at any rate. While DNH's professed interests it seeks to protect by filing suit appear germane to DNH's purpose, DNH fails to establish the third prong of associational standing's analysis: DNH cannot show that this case could be tried without the participation of its individual members. This is so because the theoretical injury would turn on a factual and particularized inquiry. A § 1981 claim depends on whether a plaintiff can show and prove that but-for their race, they would have been able to contract if not for their race. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The Supreme Court has clarified that in a § 1981 case, the "plaintiff bears the burden of showing that race was a but-for cause of its injury." *Id.* Here, DNH fails prong three of associational standing because (1) it cannot show that any mystery member was refused a contract, rather than simply deterred from applying for one in the first place. And even if DNH has alleged it, an individual member's participation in this suit is required because DNH has not alleged that

---

[2] The Second Circuit Court of Appeals affirmed the denial of DNH's preliminary injunction and dismissal of its claims under Section 1981 on behalf of undisclosed members. *Do No Harm v. Pfizer Inc.*, No. 23-15, 2024 WL 949506, at *1 (2d Cir. Mar. 6, 2024).

[3] *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (requiring the submission of an affidavit from a named member for associational standing); *Tenn. Republican Party (16-3360) v. SEC*, 863 F.3d 507, 520 (6th Cir. 2017) (citing *Summers* to hold that associational standing "requires that the plaintiff-organization 'name the individuals who were harmed' unless 'all the members of the organization are affected by the challenged activity'"; *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021) (recognizing that "courts have read *Summers* to expressly require names for associational standing on the pleadings"); *Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (finding an association lacked standing to challenge an affirmative action plan because it did "not identify any affected members by name"); *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1204 (11th Cir. 2018) (rejecting argument based on pre-*Summers* precedent and recognizing the post-*Summers* "requirement that an organization name at least one member who can establish an actual or imminent injury").

all of its members are affected. The Court can end its inquiry here and dismiss the Amended Complaint for lack of standing.

  ii.  *Member A lacks standing, whether she is identified or not.*

  Standing requires that the plaintiff (1) suffered an injury in fact; (2) show the defendant's causal connection to the injury; and (3) demonstrate that the injury would be redressed by a favorable decision. *Spokeo, Inc.*, 578 U.S. at 337. Even if DNH identified Member A by name, the allegations do not establish she has suffered injury in fact, also required to establish standing. *Carney v. Adams*, 141 S. Ct. 493, 502-03 (2020). While future injuries can provide the basis for standing, they "must be certainly impending to constitute injury in fact," and "'allegations of possible future injury' are not sufficient." *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S. Ct. 1138, 1147 (2013)). An injury that is based on a "speculative chain of possibilities" does not confer standing. *Id.* (quoting *Clapper*, 133 S. Ct. at 1150).

  To meet the "able and ready" standard that applies where one challenges a programmatic requirement as discriminatory, a plaintiff must "sufficiently differentiate himself from a general population of individuals affected in the abstract by the legal provision [s]he attacks." *Carney*, 141 S. Ct. at 502. In *Carney*, the plaintiff challenged a state law requiring an applicant for a judgeship declare a political party affiliation but failed to make this showing on summary judgment because he failed to show he applied in the past, or went to any efforts to prepare an application, or even investigate potential judgeship openings. *Id.* at 501. This lack of proof, coupled with his bald statement that he "would apply," were only "words of general intent" and suggested an "abstract, generalized grievance" that failed to illustrate injury-in-fact. *Id.* His flat statement that he met the "minimum qualifications" for the position was also deficient. *Id.* at 500.

Take another case DNH filed in the Northern District of Florida: *Do No Harm v. Vituity*, No. 3:23-cv-24746-TKW-HTC (N.D. Fl.  Dec. 14, 2023). There, the challenged program at issue would have only adversely impacted "Doctor A" if a (lengthy) chain of reactions occurred to culminate in an actual injury in fact. *See id.* at p. 2.[4] DNH has tried to force the "ready and able" standard here, but again, not sufficiently. Member A admits to not having applied for the scholarship. [Doc. 1] at p. 7 ("Member A is still ready and able to apply,"); ("**If** a court grants that relief, *she would assemble* and promptly submit all the requested application materials"); ("**If** she won, *she is prepared* to meet all requirements and expectations"). [Doc. 20] at p. 9. Member A's claims of would-be injury are just as speculative as Doctor A's assertions were in *Vituity*. Member A lacks standing based on the allegations DNH has submitted on her behalf and her lack of averments that she was *prevented* from applying for the scholarship because of her race rather than deterred. Such is not an articulated actual injury. The allegations are insufficient to establish injury-in-fact and this matter should be dismissed.

## II.   Even if Do No Harm had standing, its Section 1981 allegations fail on the face of the Amended Complaint.

DNH nor its mystery Member A can establish a Section 1981 claim based on the allegations in the Amended Complaint. The Amended Complaint should be dismissed under Rule 12(b)(6), even if the Court finds standing exists. Section 1981 "offers relief" when "racial discrimination" either: (1) "impairs an existing contractual relationship" or (2) "blocks the creation of a contractual

---

[4] "[B]ased on the affidavit filed by [Vituity] with its response, the Court has serious doubts about Plaintiff's standing because it appears that the sole member that Plaintiff relies on for standing—'Doctor A'—would only be adversely impacted by the challenged program if he applied to work for [Vituity] (which he says he is "ready and able" to do but apparently has not done), if he was hired by [Vituity] and successfully completed the credentialing process (which can take many months and may not ever happen), and if he did not qualify for any of [Vituity's] specialty-based incentives that exceed the $100,000 incentive that is only available to "Black physicians" (which is unknown and may be unknowable at this point). That is a lot of 'ifs.'" *Id.* The same is the case in the instant matter.

relationship, **so long as the plaintiff has or would have rights under the existing or proposed contractual relationship**." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (emphasis added). DNH, as an organization, clearly has no such rights, and so that is another reason that DNH is not a proper plaintiff here.[5]

But moreover, according to Fifth Circuit precedent, to succeed on a § 1981 claim, a plaintiff must establish "(1) that she is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (citing *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001)). "A §1981 claim must allege that a plaintiff was **actually prevented, and not merely deterred**, from entering into a contract. *Id.* (citing *Morris*, 277 F.3d at 752) (emphasis added). Congress passed § 1981 shortly after it ratified the Thirteenth Amendment, abolishing slavery. *Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 384 (1982). "The principal object of the legislation was to eradicate the Black Codes, laws enacted by Southern legislatures imposing a range of civil disabilities on freedmen." *Id.* at 386. And "the Act was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). According to at least one circuit court of appeals, "the legislative history of the 1991 amendment of §1981 makes it crystal clear that Congress did not intend to convert § 1981 into a general prohibition against race discrimination." *Garrett v. Tandy Corp.*, 295 F.3d 94, 100 (1st Cir. 2002) (citing H.R. Rep. No. 40(II), at 37 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 731 ("The Committee intends this provision to bar all racial discrimination *in contracts*.") (italics in *Garrett*). The *Garrett* court thus concluded that in order

---

[5] *Domino's* warned against the broad litigation strategy DNH seems to be pursuing: "satellite § 1981 litigation of immense scope." *Id.*

to satisfy the foundational pleading requirements for a suit under §1981, a plaintiff must allege that she "**was actually denied** the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus." *Id.* at 100-01 (emphasis added).

First, it is undisputed Member A is not a member of a racial minority. [Doc. 20] at p. 8. Therefore, she cannot meet the first element of her claim here. Member A has also not been denied any contract or been a recipient of "race-based animus" by NAEMT. She fails to allege she has been denied any contract, instead suggesting she is not able to "compete on equal footing because of her race." [Doc. 20] at p. 9. But that is not the test. Member A has still not alleged she was denied the ability to apply for NAEMT's scholarship because of her race under any prior scholarship cycle, or denied student membership of NAEMT, or otherwise.[6] The lack of such allegations are fatal.

*Correll v. Amazon* drives this point home. *See Correll v. Amazon.com, Inc. et al*, No. 3:21-cv-01833 (S.D. Cal. Sept. 19, 2023). There, Correll sued Amazon for alleged unequal treatment and discrimination in Amazon's Seller Certification program and other orientation-based incentive programs for retailers. *Id.* at p. 2. Correll, a mere speculative retailer at the time, pled that he visited Amazon's website in 2021 with the *intent* to use its sale services, but when he encountered Amazon programs that he said denied and deprived straight white males equal advantages (among other things) based on their race (among other things), he chose not to open an Amazon Sellers account and did not sell products on Amazon. *Id.* Correll made a § 1981 claim, and Amazon moved to dismiss for failure to state a claim. *Id.* The district court observed that to survive the motion, Correll

---

[6] Again, the fact that the scholarship application isn't accessible on NAEMT's website pending the outcome of this litigation affects all would-be applicants, regardless of race, just as much as it does Member A. She cannot claim to be on unequal footing under such facts, and to so claim is disingenuous at best.

needed to plead either an existing or future contract which Amazon impaired or blocked. *Id.* at p. 7. That he could not do, and neither can DNH here. That court dismissed the suit, and so should this Court.

These distinctions highlight that to plead a valid claim, NAEMT must have prevented, not merely deterred, a person from entering into a contract for reasons related to race-based animus. DNH's Complaint contains no such allegations. NAEMT's advertising criteria[7] for "up to four scholarships of $1,250 that may be used for tuition, fees, and books" does not deny anyone the right to apply for an EMS course anywhere in the country, apply for financial aid or other scholarship opportunities, or join NAEMT's membership as a student member. Here, Member A's averments show she was merely allegedly deterred from applying for one of NAEMT's scholarship offers only after reviewing it. But her own belief of deterrence did not nor has it ever actually prevented Member A from applying. Just like in *Correll*, there is no allegation that NAEMT prevented her from applying for the scholarship because of her race.

### Conclusion

NAEMT requests the Court grant its Motion and Dismiss and dismiss with prejudice DNH's Amended Complaint for lack of standing, or in the alternative, for failure to state a claim.

NAEMT requests all further relief to which it may be entitled under the circumstances.

Respectfully submitted, this the 18th day of March, 2024.

> **NATIONAL ASSOCIATION OF**
> **EMERGENCY MEDICAL TECHNICIANS**
>
> */s/ Mary Clark Joyner*
> R. Jarrad Garner (MSB #99584)
> Mary Clark Joyner (MSB #105954)
> ADAMS AND REESE LLP
> 1018 Highland Colony Parkway, Suite 800

---

[7] The scholarship criteria includes: commitment to entering the EMS profession; financial need; service to their community; and ability to serve as a positive ambassador the EMS profession.

Ridgeland, Mississippi 39157
(p) 601-353-3234
(f) 601-355-9708
jarrad.garner@arlaw.com
maryclark.joyner@arlaw.com
*Attorneys for NAEMT*

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

THIS the 18th day of March, 2024.

*/s/ Mary Clark Joyner*