IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DO NO HARM**                                                                                                               **PLAINTIFF**

**V.**                                                             **CIVIL ACTION NO. 3:24-CV-11-CWR-LGI**

**NATIONAL ASSOCIATION OF**
**EMERGENCY MEDICAL TECHNICIANS**                                         **DEFENDANT**

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

NAEMT submits the following Reply in Support of its Motion to Dismiss [Doc. 23]. In support, NAEMT would show unto this Court the following:

### REPLY INTRODUCTION

Despite DNH's misleading arguments on this issue, the Supreme Court struck down affirmative action in admissions, not financial aid opportunities like NAEMT's scholarship. That decision doesn't transform Section 1981's powers or grant third party organizations standing. The Amended Complaint should be dismissed under either Rule 12(b)(1) or 12(b)(6).

DNH accuses NAEMT of all-out discrimination no less than forty times in its Response. [Doc. 24]. Its argument before this Court is that, in essence, because members of any race can sue under Section 1981, *all* race conscious remedial efforts, including those in the form of scholarship opportunities, are per se prohibited under Section 1981, full stop. But DNH is not a proper plaintiff to pursue an answer to its question, and in any event, its construction and interpretation of the statute doesn't control. To agree with DNH's stance on the facts alleged here would transform Section 1981 into a sword that was enacted to be used as a shield. As explained, Section 1981 was passed by Congress to vindicate the rights of Black Americans after the eradication of slavery and the Black Codes in order to further shed both the badges and incidents

1

of it. Trying to weaponize Section 1981 against a scholarship opportunity NAEMT has run since 2021 (that lists no racial criteria) because the Supreme Court recently overruled affirmative action in the college admissions process is a legal logic game that in the end does not pass legal muster. While Section 1981 may apply to employment contracts and in education, Section 1981 does not apply to NAEMT's $1,250 scholarship opportunity.

## ARGUMENT

**I.      DNH lacks standing to sue NAEMT under Section 1981.**

First, DNH argues that it has standing to sue under Section 1981 on behalf of its mystery member because it brings a facial equal-protection challenge and seeks prospective relief, injunctive relief, and nominal damages. They are entitled to none.[1]

Second, DNH reasons that an individual member's participation is not normally necessary when an association seeks prospective or injunctive relief. *Id.* DNH stands by its alleged right to act as a representative for mystery Member A by citing situations where the plaintiff representative is empowered and entitled to do so under a specific statute.[2] Unlike those cases, Section 1981 is a statute that demands an individualized inquiry – even more exacting than Title VII's causation standard does. Indeed, in the world of Section 1981, a plaintiff "bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of*

---

[1] Section 1981 does not authorize injunctive relief. Further, *see Abner v. Kansas City S. R. Co.*, 513 F.3d 154, 160 (5th Cir. 2008) (citing *Kerr–Selgas v. American Airlines*, 69 F.3d 1205, 1215 (1st Cir.1995) (holding that a finding of liability in a § 1981 case does not indicate that the plaintiff is "'automatically entitled'" to a nominal damage.). NAEMT hasn't forfeited any argument related to DNH's entitlement to damages where NAEMT is clearly pursuing full dismissal of the case, which includes its damages claims.

[2] "[N]othing in PAMII can reasonably be read to require the Advocacy Center to name a specific individual in bringing suit to redress violations of the rights of individuals with mental illness. The text of PAMII grants standing to protection and advocacy systems to pursue legal remedies to 'ensure protection of individuals with mental illness.' § 10805(a)(1)(B)." *Doe v. Stincer*, 175 F.3d 879, 884 (11th Cir. 1999). DNH here could not be more different than the representatives there.

*Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020); *see also Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 658, 140 S. Ct. 1731, 1740 (2020).³ A plaintiff's burden to assert that her race was a but-for cause of her injury – her individualized loss of a <u>legally protected right</u> – exists at the motion to dismiss stage through the life of litigation. *Comcast*, 589 U.S. at 332. "The consequences of the law's focus on individuals rather than groups are anything but academic." *Bostock*, 590 U.S. at 659. Any claim brought under § 1981 must initially identify an impaired "contractual relationship," § 1981(b), <u>under which the plaintiff has rights</u>. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Here, Section 1981's text forecloses *DNH* from complaining about its mystery member being impaired from making a contractual relationship, someone who – as asserted by DNH from the outset – hasn't ever applied for the scholarship at issue and therefore hasn't been barred from competing on equal footing for a contractual relationship, except in her own mind.⁴ DNH has failed to meet its burden at the motion to dismiss stage: that "but for the defendant's unlawful conduct, [mystery member A's] alleged injury would not have occurred." *Comcast*, 589 U.S. at 331. That fatal deficiency cannot be blamed on any unlawful conduct of NAEMT's. NAEMT stands by the cases it cited in its principal brief for all the reasons standing is lacking here. DNH cannot assert a violation of rights on behalf of member A any more than McDonald

---

³ "[Title VII] answers that question directly. It tells us three times—including immediately after the words 'discriminate against'—that our focus should be on individuals, not groups: Employers may not 'fail or refuse to hire or ... discharge any *individual*, or otherwise ... discriminate against any *individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such *individual's* ... sex.' § 2000e–2(a)(1). And the meaning of 'individual' was as uncontroversial in 1964 as it is today: 'A particular being as distinguished from a class, species, or collection.'" Section 1981 grants all individuals within the U.S. the same rights and benefits as "enjoyed by white citizens."

⁴ Four scholarships are offered at NAEMT's discretion to people who first (1) apply and then are picked based on whether they (2) meet the criteria. It is undisputed member A did not apply.

could on behalf of someone else in *Domino's Pizza*. The Amended Complaint should be dismissed.

## II.     The Amended Complaint fails to state a claim under which relief can be granted.

    i.     *NAEMT isn't a government actor.*

DNH works hard to muddy the waters between whether NAEMT's conduct should be evaluated as a governmental actor's or private citizen's. First, DNH argues that NAEMT's stated preference of race (in the advertisement, not in the criteria itself) for the scholarship winner could not survive strict scrutiny and NAEMT makes no argument that it could satisfy this test. NAEMT isn't a state or federal actor and there is no allegation that NAEMT accepts any federal or state funding for the scholarship. "The Supreme Court has never applied strict scrutiny to the actions of a purely private entity." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 470 F.3d 827, 839 (9th Cir. 2006). While "any person, of whatever race, has the right to demand that any governmental actor subject to the Constitution justify any racial classification subjecting that person to unequal treatment under the strictest of judicial scrutiny," *Gratz*, 539 U.S. at 270 (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995), DNH is not that person, and NAEMT is not that governmental actor.

But even if this argument is somehow tenable, DNH's Amended Complaint alleges plainly that NAEMT desires to promote an EMS workforce that reflects the demographics of the communities in which it serves. *See* [Doc. 20] at ¶¶ 27-30.[5] DNH also accepts that the scholarship was established years ago to support underrepresented groups in joining the EMS

---

[5] DNH asserts that doing so is "racial balancing, which is patently illegal" and back up their allegation with a string cite to *plurality* opinions involving racial balancing and diversity in the education context – which is not illegal, even today. The government maintains a compelling interest in remedying past governmental discrimination against a racial or ethnic minority, and even after *SFFA v. Harvard*, 600 U.S. 181 (2023) was decided.

profession. *Id.* at ¶ 27. And DNH agrees white persons are not underrepresented in the EMS profession. *Id.* What more does DNH need to know? In the context of Section 1981, as well as under Title VII, those reasons *are* enough, even though DNH says they are not and cites the same case in support. *See* Response at p. 33 (citing *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 473 (11th Cir. 1999).[6]

      ii.      *No Supreme Court case addresses DNH's novel claim.*

Further, though, and more importantly here, the Supreme Court struck down affirmative action in admissions, not financial aid or private funding of scholarships. Much of DNH's Response similarly cherry-picks holdings that simplify what the Court actually says on a different issue to bolster its patchwork of a legal theory in this very different matter.[7] Specifically, *McDonald v. Santa Fe Trail Transpo. Co.*, 427 U.S. 273, 288 (1976) and cases like it were about a more pedestrian kind of contract worth litigating than what is at issue here: bilateral employment contracts in the private or public sector (*id.*; *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022)) or public or private opportunities and offers for educational services (*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) (plurality); *Gratz*, 539 U.S. at 275-76; *SFFA v. UT Austin*, 37 F.4th 1078 (5th Cir. 2022)).

---

[6] *Compare* "[L]iability for intentional discrimination under § 1981 requires only that decisions be premised on race, not that decisions be motivated by invidious hostility or animus." Response at p. 33 (citing *Ferrill*, 168 F.3d at 473) *to* "Discrimination in employment on the basis of protected traits such as sex, religion, age, national origin, or race, may be permissible in at least three circumstances. […] [U]nder the aegis of "affirmative action," employers may engage in disparate treatment in favor of a protected class **for the purpose of remedying past discrimination**" and "**this defense is available to the section 1981 defendant**." *Ferrill*, 168 F.3d at 473, 477 (emphasis added).

[7] *Gratz* didn't hold that <u>all</u> race-conscious affirmative-action programs violate Section 1981, though DNH says so. Response at p. 33. Instead, *Gratz* turned on its facts and found that the university's specific use of race in its current freshman admissions policy **was not narrowly tailored to achieve an asserted compelling interest in diversity.** *Gratz*, 539 U.S. at 275-76.

But *McDonald* did *not* hold that Section 1981 prohibits affirmative action. *See* 427 U.S. at 280 n.8 (Santa Fe disclaims that the actions challenged here were any part of an affirmative action program, and we emphasize that we do not consider here the permissibility of such a program, whether judicially required or otherwise prompted); *see also Setser v. Novack Inv. Co.*, 657 F.2d 962 (8th Cir. 1981) ("We conclude that the Supreme Court, by approving race-conscious affirmative action by employers in *Weber*, implicitly approved the use of race-conscious plans to remedy past discrimination under section 1981.") *Id.* at 966-67. The issue in the employment context, for instance, is further fleshed out in *Setser*:

> Moreover, by equating the affirmative action standards of title VII with those of section 1981, we obviate the employer's risk of inconsistent obligations. Private employers already face a dilemma: they risk termination of federal benefits and liability for past discrimination against blacks, for failing to institute an affirmative action plan, and they face liability to whites for any voluntary preferences adopted to remedy past discrimination. If section 1981 prohibited what title VII permitted with respect to racially preferential remedies, the private employer's ability to conform its conduct to federal discrimination statutes would become more complicated and uncertain than it already is.

*Id.* at 967-68. Thus, DNH's argument that Section 1981 "bans intentional discrimination" is not as cut and dry as they assert. Surely Member A not being a racial minority is a relevant factor, and NAEMT pointing that out as grounds for dismissal in this case is not as shocking as DNH claims or that "badly foreclosed."

As the above shows, DNH insinuating that this Court would be overruling the Supreme Court's decision in *McDonald* if it agreed with NAEMT and dismissed the Amended Complaint is not true. What is clear from the citations in the parties' briefs here is that education and employment concerns across private and public sectors are a far cry from the private funding of a $1,250 scholarship that, if won, would be used for tuition, fees, and books and the promotion of same being aimed at students of color with demonstrated financial need in a 70% white work

6

field. None of the cases discuss in depth how to treat a unilateral scholarship like NAEMT's and certainly do not answer whether Section 1981 should extend to such under a relevant fact pattern. And this case cannot and should not be the first to so hold.

    iii.    *The First Amendment protects NAEMT's choice to speak and to associate.*

What remains true is that "[a]lthough Section 1981 reaches **some** private contracts, it does not reach all associational relationships." *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 665 (E.D. La. 1976) (emphasis added). The First Amendment protects speech and implicitly protects the freedom of association. The framers designed the Free Speech Clause of the First Amendment to protect the "freedom to think as you will and to speak as you think." *303 Creative LLC v. Elenis*, 600 U.S. 570, 584 (2023) (citing *Boy Scouts of America v. Dale*, 530 U.S. 640, 660–661 (2000)). "Equally, the First Amendment protects acts of expressive association." *Id.* at 586. In *303 Creative*, Justice Gorsuch asks the very rhetorical question that DNH tries to now give legs: "Does anyone think a speechwriter loses his First Amendment right to choose for whom he works if he accepts money in return?" *303 Creative LLC*, 600 U.S. at 594. To agree with DNH's legal theory would lead to the conclusion that NAEMT has lost its First Amendment right to choose a scholarship winner on the technical grounds that a scholarship is defined as the type of contract Section 1981 seeks to police and risk contravening the First Amendment. Such a holding would go too far.

And the Fifth Circuit's one look at a similar query appears to agree. *Cook v. Advertiser Co.*, 458 F.2d 1119 (5th Cir. 1972). There, the question was whether the court could exercise jurisdiction over the content and arrangement of the society pages of a newspaper. *Id.* at 1120. In determining the answer to be "no" long ago, the Court held:

> "Assuming that the plaintiffs have a statutory right under Section 1981 to have their bridal announcements published and that the defendant newspaper has a

7

constitutional right to a 'free press', this Court reaches the firm conclusion that said defendant's constitutional right to be free from judicial interference in the selection of announcements for publication far outweighs the Section 1981 right plaintiffs are attempting to assert. It is for this same reason that plaintiffs cannot prevail against defendants upon a First Amendment theory.

*Id.* at 1121.

So while DNH points hastily to the one-page opinion in the 2-1 split decision of *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, No. 23-13138, 2023 WL 6520763, at * 1 (11th Cir. Sept. 30, 2023) for the idea that it is "no question" that contest-based grant programs give rise to "a contractual regime," this court (and the Fifth Circuit) could just as much agree with the Eleventh Circuit's dissent. *Id.* at *2-3.[8] And in fact, the Court should find the First Amendment protection of NAEMT's conduct trumps any statutory right of DNH (which is nonexistent) and its alleged mystery member's, who doesn't have a legally protected right to be awarded a contract – only the right to apply – if she meets the criteria.

NAEMT is free to engage in protected speech, which includes expressive conduct like funding the scholarship at issue here. Section 1981 cannot force NAEMT to express itself differently than it has chosen by creating the scholarship award at issue. NAEMT's choice in funding a scholarship and associate with its potential winners is a protected constitutional right which the third party here has no rights to revise or even apply for. DNH agrees that NAEMT is trying to "ensure[] its money is spent a certain way and increases the number of EMS professionals." Response at p. 29. This course of conduct is protected speech. In the Eleventh

---

[8] DNH cites to the Northen District of Georgia decision at times in support of its Response, too. *See* Response at p. 32 (citing *Fearless*, 2023 WL 6295121). But the allegations in Fearless are not equal to the allegations against NAEMT. The allegations there was that Fearless' contest "is open only to Black women whose businesses are at least 51% owned by Black women, among other eligibility requirements." That is not this case. Again, the four eligibility requirements to **apply**, per the application, are: Commitment to entering the EMS profession; Financial need; Service to their community; and Ability to serve as a positive ambassador for the EMS profession. [Doc. 20] at ¶17.

circuit, *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247 (11th Cir. 2021) analyzed a First Amendment case concerning monetary expressive conduct. *Id.* There, a group brought a religious discrimination claim under Title II of the Civil Rights Act regarding its exclusion as a possible charity recipient. *Id.* at 1253–54. The Eleventh Circuit found that the First Amendment protected Amazon's right to engage in expressive conduct by selecting which charities were eligible to receive donations. *Id.* at 1256. In 2012, the Middle District of Tennessee found that to force ABC to employ race-neutral criteria in their casting decisions in order to showcase a "more progressive message" would violate the First Amendment. *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 1000 (M.D. Tenn. 2012).

NAEMT's decision to provide a scholarship award to a person who meets all the application criteria and is preferably a person of color is protected expressive conduct because NAEMT intends to convey the importance of diversity in the EMS workforce, which is clear to reasonable people who view the message. DNH is impermissibly trying to control NAEMT's conduct and flouts the First Amendment in the process. *See Coral Ridge*, 6 F.4th at 1254; *see also Fearless Fund*, 2023 WL 6520763, at *2-3 (Wilson, J., dissenting). Because the scholarship here is expressive conduct protected by the First Amendment, DNH should not, as a matter of law, be allowed to compel NAEMT to change its speech (the awarding of a scholarship) because one unidentified white person somewhere in the country was not awarded a scholarship she never applied for in the first place. *See Coral Ridge*, 6 F.4th at 1254. DNH's Amended Complaint lacks a claim under which relief can be granted. It should be dismissed with prejudice.

Respectfully submitted, this the 15th day of April 2024.

**NATIONAL ASSOCIATION OF**
**EMERGENCY MEDICAL TECHNICIANS**

9

      *By:* */s/ Mary Clark Joyner*
         R. Jarrad Garner (MSB #99584)
         Mary Clark Joyner (MSB #105954)
         ADAMS AND REESE LLP
         1018 Highland Colony Parkway, Suite 800
         Ridgeland, Mississippi 39157
         (p) 601-353-3234; (f) 601-355-9708
         jarrad.garner@arlaw.com
         maryclark.joyner@arlaw.com
         *Attorneys for NAEMT*

## CERTIFICATE OF SERVICE

 I do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

 THIS the 15th day of April, 2024.

         */s/ Mary Clark Joyner*